UNITED STATES of America

v.

Joseph W. BARNES, Robert McDevitt, a/k/a Charles Robert McDevitt, Charles J. Doheny, Samuel Miller and Elias Dubas.

Crim. No. 21099.

United States District Court
E. D. Pennsylvania.

Jan. 7, 1963.

Drew J. T. O'Keefe, U. S. Atty., Edmund E. DePaul, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

A. Charles Peruto, Philadelphia, Pa., for Joseph W. Barnes.

Jacob Kossman, Philadelphia, Pa., for Robert McDevitt.

Martin Vinikoor and Howard L. Criden, Vinikoor, Fein, Criden & Johanson, Philadelphia, Pa., for Samuel Miller.

Benjamin R. Donolow, Philadelphia, Pa., for Elias Dubas.

Daniel J. DiGiacomo, Philadelphia, Pa., for Charles J. Doheny.

GRIM, District Judge.

According to the government's brief,[1] the defendant Barnes, employed by the First Pennsylvania Banking and Trust Company,[2] embezzled some $285,000 from his employer over a nine-month period in 1961. He used this money to gamble on sporting events, placing bets with the defendant McDevitt, a bookmaker, who learned during the period in question that Barnes was taking the money from the bank. The bets were in large amounts, many for over $5,000 each, and at least one for $20,000. Because of their magnitude, McDevitt "laid off" the bets with the defendants Miller and Dubas in much the same way that an insurance company, finding a risk too large for it to carry alone, will divide the risk among, or reinsure it with, other insurers. Miller and Dubas also learned that the money Barnes was betting was being taken by him from the bank. At one time or another during the betting both Miller and Dubas had personal contact with Barnes.

On the basis of this alleged state of facts a fifteen-count indictment was returned against Barnes, McDevitt, Miller, Dubas and Doheny. Barnes was indicted in one count for embezzling the money, in violation of 18 U.S.C. § 656. In another count all the defendants were indicted under 18 U.S.C. § 371 for conspiracy to have Barnes embezzle the money, to have the other four defendants receive and dispose of the embezzled money, and to have the same four defendants aid, abet, and counsel and commission of those offenses.

Defendants Miller and Dubas have moved to dismiss the indictment.[3]

## CONSPIRACY

Count I of the indictment charges conspiracy. Defendants Miller and Dubas attack Count I on the grounds (a) that it is vague and uncertain and does not adequately or fully inform the moving defendant of the exact nature of the charges against him in that the allegations of fact and the overt acts alleged are insufficient, uncertain, and ambiguous, and the count is insufficient in form and substance to plead the judgment in bar in another prosecution for the same offense; (b) that the overt acts do not set forth any factual evidence of the conspiracy, do not indicate that any illegal agreement was entered into by the moving defendant and others, and fail to show that he acted in concert with the others to accomplish an unlawful purpose; (c) that the count fails to set forth the necessary facts constituting the corpus of the substantive offense which was to be the object of the conspiracy; (d) that the count and the overt acts do not indicate the commission of any criminal acts by the moving defendants; and (e) that the count is factually insufficient to charge the moving defendant with violating the statutes enumerated in the indictment.

■ Does Count I stand up in the face of the attack?

Count I charges that from August 7, 1961, to December 27, 1961, at Philadelphia, all the defendants:

"* * * did knowingly and unlawfully conspire, combine, confederate and agree together and with each other, and with other persons to this Grand Jury unknown, to commit certain offenses against the United States of America, to wit: to violate Title 18 United States Code, Section 656."

Count I continues:

"It was part of the plan and purpose of the said conspiracy that JOSEPH W. BARNES * * * embezzle and wilfully misapply the moneys, funds and credits * * * of such bank, and entrusted to its

1. The brief states facts which are not set forth in the indictment. This opinion, however, states facts following the government's brief in order to make the problem in the case more understandable.

2. Whose deposits were insured by the Federal Deposit Insurance Corporation.

3. Barnes and McDevitt have pleaded guilty.

custody and care, and to the custody and care of the defendant JOSEPH W. BARNES, to wit: $285,800.

"It was further part of the plan and purpose of said conspiracy that [the other four defendants] and each of them, receive, possess, conceal and dispose of said property and money belonging to and taken from, said bank, in violation of law..

"It was further part of the plan and purpose of the said conspiracy that [the other four defendants] aid, abet and counsel the commission of said offenses."

Count I continues:

"2. That at the times and places hereinafter named, in furtherance of the execution and for the purpose of carrying into effect the objects, designs and purposes of the said conspiracy [all the defendants] did do and perform the following overt acts:"

Of the 19 overt acts set forth under this introduction, the following are typical of a number:

"2. On or about August 28, 1961, at Philadelphia, in the Eastern District of Pennsylvania, ROBERT McDEVITT, a/k/a Charles Robert McDevitt, met and had a conversation with SAMUEL MILLER and ELIAS DUBAS."

"3. On or about September 5, 1961, at Philadelphia, in the Eastern District of Pennsylvania, JOSEPH W. BARNES delivered the sum of $5,000 to ROBERT McDEVITT, a/k/a Charles Robert McDevitt, at or near 49th Street and Baltimore Avenue."

The eight other overt acts [4] which mention defendants Miller and Dubas variously charge them with having met and had conversations with other defendants at Philadelphia at stated times and with having received from defendant McDevitt sums of money ranging in amount from $2,000 to $7,000 at stated times and places. The overt acts give no details of the substance of the conversations. They give no details of the source of the money or the circumstances surrounding its delivery. Indeed, the entire indictment says not a word about betting or gambling, and the indictment charges no offenses against any laws having to do with gambling.

Viewing Count I as a whole, it alleges that at Philadelphia during the stated period of time, in violation of 18 U.S.C. § 371, all the defendants conspired to violate 18 U.S.C. § 656, which condemns embezzlement of a bank's funds by an employee. Count I alleges that it was part of the plan and purpose of the conspiracy (a) that Barnes embezzle money from the bank, (b) that the other four defendants receive and dispose of that money, and (c) that the other four defendants "aid, abet and counsel the commission of said offenses." The overt acts in Count I allege meetings, conversations and transfers of money, all in futherance of the purposes of the conspiracy.

Section 371 of Title 18 U.S.C. provides:

"If two or more persons conspire * * * to commit any offense against the United States * * * and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined * * * or imprisoned * * * or both. * * * *"

In United States v. Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92 (1953), the Supreme Court repeated the language of Mr. Justice Sutherland in Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932):

"The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and in

4. Overt acts 4, 5, 6, 7, 9, 10, 11, 12.

case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' "

The elements of a conspiracy as applied to the case at bar are (a) an agreement (b) between two or more persons (c) to commit an offense against the United States, and (d) an overt act (e) by one or more of those persons (f) to effect the object of the conspiracy.

Count I of the present indictment contains all these elements:

(a) an agreement (b) between two or more persons: [all defendants] "did knowingly and unlawfully conspire, combine, confederate and agree together and with each other, and with other persons * * * unknown * * *."

(c) to commit an offense against the United States: "to violate Title 18 United States Code, Section 656."

(d) overt acts (e) by one or more of those persons: meetings, conversations, and transfers of money involving Miller and Dubas.

(f) to effect the object of the conspiracy: "in furtherance of the execution and for the purpose of carrying into effect the objects of the said conspiracy [all the defendants] did do and perform * * *" the overt acts alleged.

Does Count I sufficiently apprise Miller and Dubas of what they must be prepared to meet, and does it show with accuracy to what extent they may plead an acquittal or conviction in bar of a subsequent prosecution? The language of the Supreme Court in United States v. Debrow, supra, 346 U.S. pp. 377, 378, 74 S.Ct. 115, is apropos:

"The charges of the indictments followed substantially the wording of the statute, which embodies all the elements of the crime, and such charges clearly informed the defendants of that with which they were accused, so as to enable them to prepare their defense and to plead the judgment in bar of any further prosecution for the same offense."

Count I charges that (a) in a named city, (b) over a specified period of time, there was (c) a conspiracy (d) by named defendants (e) to violate 18 U.S.C. § 656, by having (f) one named defendant (g) embezzle money from (h) a named bank (i) which employed him and (j) by having the other named defendants receive the money. Here are details sufficient to let the defendants know what they are up against, and numerous and specific enough to identify the offense in the event of a subsequent prosecution therefor.

This determines all but one of the issues raised by Miller and Dubas with respect to Count I. There remains their contention that the overt acts do not set forth any factual evidence of the conspiracy. This contention is without merit. F.R.Crim.P. 7(c) provides:

"The indictment * * * shall be a plain, concise and definite written statement of the essential facts constituting the offense charged * *. It need not contain * * * any other matter not necessary to such statement. * * *"

■ It necessarily follows that an indictment need not set forth evidence, whether of conspiracy or other matters.

Count I is sufficient and proper.

### BANK ROBBERY ACT

■ In other counts[5] of the indictment, Miller and Dubas are severally charged with violation of subsection (c) of the Bank Robbery Act, 18 U.S.C. § 2113.[6] This provides in pertinent part:

"(b) Whoever takes and carries away, with intent to steal or pur-

---

5. Counts IX, X, XI, XIII, XIV and XV.

6. "The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated." F.R.Crim.P. 7(c).

loin; any property or money * * * belonging to, or in the care, custody, control, management, or possession of any bank * * * shall be fined * * * or imprisoned * * * or both; * * *.

"(c) Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value knowing the same to have been taken from a bank * * * in violation of subsection (b) of this section shall be subject to the punishment provided by said subsection (b) for the taker."

The moving defendants contend that they cannot be indicted under subsection (c) for receiving the money from Barnes in this case because Barnes allegedly took the money from the bank in violation of 18 U.S.C. § 656 (under which section he is here indicted) and not in violation of subsection (b) of § 2113,[7] and because an essential element of the offense of receiving under subsection (c) is that the money or property be received "knowing the same to have been taken * * * in violation of subsection (b) of this section."

This contention is without merit. The fact that Barnes is indicted under § 656 and not under § 2113(b) does not interdict the indictment of Miller and Dubas under § 2113(c). If the government should be able to establish at trial that Barnes's acts and intent amounted to a violation of § 2113(b) and that Miller and Dubas received the money from him, knowing it to have been taken from the bank in violation of § 2113(b), they can be found guilty of violating § 2113(c), even though Barnes could not be found guilty of violating § 2113(b) for the reason that he has not been indicted under that provision.[8]

Accordingly, the motion to dismiss will be denied as to Counts IX, X, XI, XIII, XIV, and XV.

## AIDING AND ABETTING

In Count VIII Dubas and in Count XII Miller are separately indicted for aiding and abetting in violation of 18 U.S.C. §§ 2[9] and 656. Each count charges that the respective defendant "did knowingly and unlawfully aid, abet and counsel" Barnes in the commission of the offense charged in Count II, viz.: that Barnes "did knowingly and unlawfully embezzle" in violation of 18 U.S.C. § 656, which provides:

"Whoever, being an * * * employee of * * * any * * * insured bank * * * embezzles, abstracts, purloins or willfully misapplies any of the moneys * * * of such bank * * * shall be fined * * * or imprisoned * * * or both * * *."

The moving defendants contend that Counts VIII and XII are defective in failing to charge that the aiding and abetting were done willfully or with an intent to defraud or injure the bank.

Cases cited by the moving defendants in support of their contention[10] are of no help since they deal with a charge of willful misapplication, an offense separately set forth in the statute, which specifically uses the term "willful", implying intent. The case at bar deals with embezzlement, with which the statute does not explicitly couple any qualifying term. Moreover, as Judge Learned Hand held in United States v. Matot, 146 F.2d 197, 198 (2d Cir., 1944) under the earlier form of § 656 which included the words "with intent in any case to injure or defraud such Federal reserve bank," the term "embezzlement" presupposes a fraudulent intent. Thus, to

---

7. Section 2113 provides for a larger maximum sentence than § 656.

8. See footnote 6, supra.

9. 18 U.S.C. § 2 "(a) Whoever commits an offense against the United States, or

aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

10. Such as United States v. Vannatta, 189 F.Supp. 937 (D.Hawaii, 1960).

charge that a person "embezzled" sufficiently charges that he did what he did with a fraudulent intent.

Counts VIII and XII charge Miller and Dubas with "knowingly and unlawfully" aiding, abetting, and counselling Barnes to "knowingly and unlawfully" embezzle. Under § 656 this is a sufficient averment, and the motion to dismiss as to Counts VIII and XII will be denied.